UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Mirapex Products Liability Litigation** | MDL No. 07-1836 (MJD/FLN) |
| Marc Mancini, | Civil No. 10-5009 (MJD/FLN) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Boehringer Ingelheim Pharmaceuticals, Inc., et al., | |
| Defendants. | |

_____

William Nefzger for Plaintiff.
Scott Smith & Lariss Jude for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 11, 2013 on Defendants' motion for summary judgment. The matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED** and that Plaintiff's claims be dismissed with prejudice.

## I. BACKGROUND

Plaintiff Marc Mancini began taking Mirapex in January 2006 and started gambling almost "almost immediately" afterwards. Smith Aff. Ex. 2 at 2, ECF No. 59; *id.* Ex. 4. at 20. His gambling began with "small stuff" like lottery scratch-offs but later progressed to slot machines. *Id.* Ex. 4 at 20. In January 2008, Mancini saw his treating neurologist, Dr. Mark Lew, and disclosed to him that he had experienced increased gambling and other compulsive behaviors after taking Mirapex. *Id.* Ex. 5 at 1. Mancini reported to Dr. Lew that he "had been gambling and winning but not

excessively." *Id.* According to Dr. Lew, Mancini told him he satisfied his gambling urge by playing "for brief periods of time on online sites that allow him to play but not charge money. . . . He has never gambled online for money, by his report. He recently purchased a new mattress and felt that he was quite excessively compulsive in researching this." *Id.* at 1–2. Mancini admits that he learned of a possible association between Mirapex and pathological gambling and other impulse-control disorders during this office visit. *Id.* Ex. 4 at 15.

Mancini saw Dr. Lew a few months later, in April 2008. *Id.* Ex. 6 at 1. Mancini again reported experiencing gambling and other compulsive behaviors. *Id.* According to Dr. Lew's notes, Mancini

> noted with increasing stress that he has become a bit more compulsive. He continues to play the slots online, and occasionally when he goes to Las Vegas as well. He tells me that this is controlled, and he does not have any significant problems, but with the stress, he has noted the compulsions to be a bit more intense. On occasion he is has [sic] described it as 'driving a car without brakes.'

*Id.* Dr. Lew expressed concern regarding Mancini's reported behaviors. *Id.* at 2 ("I have told him I have substantial and significant concerns regarding his impulse control/dyscontrol behavior and his gambling. He has assured me that things are well under control."); *see also id.* Ex. 7 at 1 ("I should note that every visit I have had since the patient has been on Mirapex for better than five years, we discuss the potential for compulsive behaviors, and he flat out denied any significant problem."). Dr. Lew talked to Mancini about "cutting back on his Mirapex," but Mancini was "resistant" to the idea. *Id.* Ex. 6 at 2.

Mancini continued taking Mirapex until July 2010, when he finally reported to Dr. Lew the full extent of his gambling. *Id.* Ex. 7 at 1–2. Dr. Lew immediately took Mancini off Mirapex. *Id.* at 2. Mancini commenced this action six months later, on December 30, 2010.

## II. ANALYSIS

2

### A. Standard of review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Mancini's claims are time-barred.

Defendants contend that all of Mancini's claims are barred by California's statute of limitations.[1] The statute of limitations for personal-injury claims resulting from the ingestion of pharmaceutical drugs is two years. *See* Cal. Code Civ. P. §§ 335.1; 340.8(a). Under California law, a claim accrues when "the plaintiff suspects, or should suspect that [he] has been wronged." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 930 (Cal. 1988); *see also* Cal. Code Civ. P. § 340.8(a).

Mancini concedes that he suspected or should have suspected he had been wronged by Defendants as a result of his visits to Dr. Lew in January and April 2008.[2] He contends, however,

---

[1] The parties agree that California law governs this dispute. *See* Def.'s Br. at 10, ECF No. 58; Pl.'s Br. at 10, ECF No. 65.

[2] To be more precise, Mancini conceded at that hearing that he would have a difficult time making a good-faith argument that he did not have inquiry notice as a result of his visits to Dr. Lew in January and April 2008. The Court agrees.

the statute of limitations was tolled because the Mirapex made him "insane" within the meaning of Cal. Code Civ. P. § 352(a) and *Hsu v. Mt. Zion Hospital*, 66 Cal. Rptr. 659, 664 (Cal. Ct. App. 1968). If a plaintiff's claim begins to accrue while the plaintiff is "insane," the statute of limitations is tolled "until the plaintiff is restored to sanity." *Feeley v. S. Pac. Trans. Co.*, 234 Cal. App. 3d 949, 952 (Cal. Ct. App. 1991); Cal. Code Civ. P. § 352(a). Insanity has been defined by California courts "as a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts." *Hsu*, 66 Cal. Rptr. at 664.

Mancini relies on two pieces of evidence in support of his contention that the Mirapex made him insane: Dr. Lew's office notes dated July 29, 2010 and his own affidavit submitted in opposition to this motion. In his office notes, Dr. Lew observed the following:

> He feels that he was somewhat disconnected from the potential effects of his actions while he was taking Mirapex. At that time, he clearly had no insight into the situation, and this was to the extreme that he covered his activities and did not confide in his significant other, and basically lied to me each time I asked him about how he was doing. This was all related to his lack of insight caused by behavioral changes from his Mirapex. . . . He appears today to be dramatically improved with regard to his insight and understanding of his compulsions and behavioral change. He appears to be much more firmly based in reality today.

Ex. 4 at 1–2, ECF No. 66. Mancini echos these observations in his affidavit. He writes, "while under the influence of Mirapex, I was not firmly based in reality, lacked insight into my actions, was disconnected from reality, was incapable of transacting business in a competent manner and generally could not understand or appreciate the nature, effects, or consequences of my acts." Mancini Aff. ¶ 1, ECF No. 66.

Dr. Lew is Mancini's treating neurologist. He is not a psychiatrist. In the Court's view, Dr. Lew is not qualified to offer an expert opinion on Mancini's state of mind at the time his claim

4

accrued. *Gazal v.Boehringer Ingelheim Pharmaceuticals, Inc.*, 735 F.Supp.2d 1113, 1122–23 (D. Minn. 2010) (reasoning that Mirapex plaintiff's treating physician was not competent to offer an expert opinion as to plaintiff's state of mind because he was not a psychiatrist). Even if he were, it is not clear whether the observations contained in Dr. Lew's notes reflect his medical opinion or whether he is merely recounting what Mancini told him during his office visit.

In any event, Dr. Lew's office notes and Mancini's affidavit do not undermine the following facts: Mancini has never been diagnosed with, or treated for, any mental illness or other psychological disorder. Smith. Aff. Ex. 4 at 13; *see also Gazal*, 735 F.Supp.2d at 1123. He taught as a full-time college professor and served as the chair of his department until June 2008. Smith Aff. Ex. 10 at 1; *id.* Ex. 6 at 1. He earned $57,800 in fees for speaking engagements in 2008, $7,600 of which was earned during the months of January and February. *Id.* Ex. 17 at 2; *see also Gazal*, 735 F.Supp.2d at 1123 (Mirapex plaintiff not of "unsound mind" under Texas law in part because he "ran and managed an extremely successful construction company" during the period of alleged disability). He even told his doctor he had experienced increased gambling urges and other compulsive behaviors as a result of his Mirapex usage. Smith Aff. Ex. 5 at 1–2; *id.* Ex. 6 at 1; *see also Gazal*, 735 F.Supp.2d at 1123. In April 2008, he said that his compulsions felt like "driving a car without brakes." Smith Aff. Ex. 6 at 1. His contemporaneous insight into his situation weighs against a finding of insanity. *Gazal*, 735 F.Supp.2d at 1123. The Court concludes that no reasonable jury could find that Mancini was incapable of caring for his property, transacting business, or understanding the nature or effects of his acts in January or April 2008.

Mancini did not file this lawsuit until December 2010. His claim accrued in January or April 2008. The statute of limitations in California is two years. Because no tolling provision applies, Mancini's claim is time-barred. The Court recommends that it be dismissed with prejudice.

### C. Mancini's other objections have no merit.

Mancini contends that summary judgment should be denied under Rule 56(d) because he needs discovery on whether Defendants knew that Mirapex caused its users to not understand the nature or effects of their acts. But whether Defendants knew that Mirapex caused such a condition does not shed any light on whether this particular plaintiff, Mancini, was or was not insane at the time his cause of action accrued. *In re Wholesale Grocery Prods. Antitrust Litig.*, 2013 WL 140285 at *7 (D. Minn. Jan. 11, 2013) (party opposing summary judgment under Rule 56(d) must show the "knowledge or control of the facts is exclusively or largely with the party moving for summary judgment") (internal quotation marks omitted). Likewise, Mancini contends that whether Mirapex made him insane is "arguable [sic] the province of expert testimony." Nefzger Aff. ¶ 11, ECF No. 66. The Court agrees. This case, however, has been pending for over two years. There is nothing that would have prevented Mancini from retaining an expert to provide such opinion. *Cf. In re Wholesale Grocery Prods. Antitrust Litig.*, 2013 WL 140285 at *7 ("The party seeking delay should also describe attempts to obtain those facts it argues are essential.") (internal quotation marks omitted). Mancini has not offered a legitimate excuse for his delay.

Mancini also contends that each ingestion of Mirapex constituted a separate tort such that he has viable claims against Defendants for any losses caused by Mirapex since December 30, 2008, two years prior to the filing of this lawsuit. This claim-splitting theory has been rejected by California courts and has no merit. *Grisham v. Phillip Morris U.S.A., Inc.*, 54 Cal.Rptr.3d 735, 748–50 (Cal. 2007).

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY**

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (ECF No. 56) should be **GRANTED**;

2. Plaintiff's cross-motion to stay Defendants' motion for summary judgment pending discovery (ECF No. 65) should be **DENIED**;

3. Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.


DATED: February 13, 2013                    *s/ Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 28, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 28, 2013,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.